IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BART BURTON, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-00109 |
| ) | Judge Campbell / Knowles |
| v. ) | |
| ) | |
| JOSH TAYLOR, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

Pending before the Court is a Motion for Summary Judgment filed by Defendants William Oliver and Tracy Luna in their individual capacities. Docket No. 53. Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 54), and a Statement of Undisputed Facts (Docket No. 55), along with their Affidavits (Docket Nos. 53-1, 53-2).

Plaintiff has filed a Response in Opposition to Defendants' Motion for Summary Judgment (Docket No. 60), a Statement of Disputed Facts (Docket No. 61), and his Affidavit (Docket No. 59).

Defendants have filed a Reply to Plaintiff's Response (Docket No. 81), Plaintiff's Response to Defendant's [*sic*] First Set of Interrogatories and Request for Production of Documents (Docket No. 81-1), and Excerpts from Plaintiff's Deposition (Docket No. 81-2), along with the convenience store surveillance video and photographs from the scene (Attachments to Docket No. 80).

1

Plaintiff filed this pro se, in forma pauperis action pursuant to 42. U.S.C. §1983, alleging that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights during his arrest and subsequent incarceration on November 16, 2009. *See* Docket No. 1, Complaint, and Docket No. 35, Amended Complaint. Plaintiff sues all Defendants in their individual capacities only. *Id.* Plaintiff seeks compensatory and punitive damages, as well as any other relief to which he may be entitled. *Id.*

Defendants argue that they are entitled to summary judgment because their Affidavits establish that they did not violate Plaintiff's constitutional rights. Docket Nos. 53-55. Specifically, Defendant Luna swears that Plaintiff had already been taken into custody when he arrived at the scene and that his only participation was to lead Plaintiff outside, arrest him for public intoxication and resisting arrest, put him in the police car, and transport him to the Giles County Jail without incident. Docket No. 53-1. Defendant Luna denies tasering, utilizing any force, or inflicting any mental or physical pain upon Plaintiff, and denies witnessing anyone else taser, utilize any force, or inflict any mental or physical pain upon Plaintiff. *Id.* Defendant Luna reports handcuffing Plaintiff in the front because Plaintiff complained of having had undergone shoulder surgery, and he reports that another trooper brought Plaintiff a bottle of water because Plaintiff had complained that he was thirsty. *Id.*

Defendant Oliver swears that when he arrived on the scene, he observed an Alabama State Trooper with a subject in custody and additional law enforcement on the scene, so he determined that the situation appeared to be under control and that his help was not needed. Docket No. 53-2. Accordingly, Defendant Oliver swears that he left the scene without ever getting out of his car. *Id.* Defendant Oliver swears that did not touch, speak to, or in any way

2

have contact with Plaintiff, and that he did not witness anyone use force against Plaintiff. *Id.*

Plaintiff essentially responds that his Affidavit establishes that genuine issues of material fact exist. Docket No. 59. Specifically, Plaintiff states, *inter alia*, that Defendant Luna kicked him in the ribs; kneed him in the back; twisted, pulled, and bent his arm, shoulder, head, and neck; struck and beat him; stomped on his ankle; drug him feet first through the store to the outside of the gas station parking lot; and drove wildly without securing Plaintiff via seatbelt when he transported Plaintiff to Jail. *Id.* Plaintiff also states that, as an additional result of Defendant Luna's alleged actions, his marriage has been irretrievably broken and he has lost his truck and work tools. *Id.*

With regard to his allegations against Defendant Oliver, Plaintiff responds in his Affidavit that, upon information and belief, Defendant Oliver, acting in his capacity as Chief of the Ardmore Police Department, was present inside the gas station convenience store and witnessed the alleged use of excessive force against him, but failed to intervene. *Id.* Plaintiff contends that Defendant Oliver's failure to intervene or control his employees violated his rights. *Id.*

Defendants reply that, despite the conflicting Affidavits, no genuine issues of material fact exist because the submitted gas station convenience store surveillance video directly refutes many of the claims made by Plaintiff, supports Defendants' sworn statements, and clearly establishes that they did not violate Plaintiff's constitutional rights. Docket No. 81. Defendants also reply that no genuine issues of material fact exist because Plaintiff's own Deposition testimony contradicts the claims in his Affidavit. *Id.*

For the reasons discussed below, the undersigned recommends that Defendant Luna's

3

Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART and that Defendant Oliver's Motion for Summary Judgment be GRANTED.

## II. Facts in a Form Required by Fed. R. Civ. P. 56

### A. Defendant Luna's Affidavit

On November 16, 2009, Defendant Luna was an officer in the Ardmore Police Department who received a call that an Alabama State Trooper was in pursuit of a suspect traveling toward the city of Ardmore. Docket No. 53-1, ¶¶ 4, 5. Defendant Luna heard on the radio that the suspect had been stopped at a Chevron Station, and he went to the Chevron Station to see if he could assist. *Id.*, ¶¶ 8, 9. When he arrived at the Chevron Station, the Alabama State Trooper had already taken Plaintiff into custody. *Id.*, ¶ 10. Defendant Luna and the Alabama State Trooper led Plaintiff outside. *Id.*, ¶ 11. Defendant Luna arrested Plaintiff for public intoxication and resisting arrest, and put Plaintiff in his patrol car without incident. *Id.*, ¶¶ 12, 13. Defendant Luna transported Plaintiff to the Giles County Jail, which is approximately twenty miles away. *Id.*, ¶¶ 14, 15. During the trip to Jail, Plaintiff did not speak to Defendant Luna or complain of any pain or discomfort. *Id.*, ¶¶ 15, 16.

Defendant Luna did not inflict any physical force against Plaintiff, or did not see anyone else inflict any physical force against Plaintiff. *Id.*, ¶¶ 17, 18, 21. Defendant Luna did not physically injure Plaintiff or cause him to suffer physical or mental pain, nor did he see anyone else physically injure Plaintiff or cause him physical or mental pain. *Id.*, ¶ 19. Defendant Luna did not taser Plaintiff, did not stomp on Plaintiff's ankle, and did not see anyone else stomp on Plaintiff's ankle. *Id.*, ¶¶ 20, 22.

Defendant Luna handcuffed Plaintiff in the front because he complained of having had

4

shoulder surgery.  *Id.,* ¶ 23.

**B.  Defendant Oliver's Affidavit**

On November 16, 2009, Defendant Oliver was the Chief of the Ardmore Police Department.[1]  Docket No. 53-2, ¶ 4.  On that date, he was notified by radio at approximately 9:45 a.m. that an incident had occurred at the Chevron Station.  *Id.*, ¶ 6.  Accordingly, he proceeded to the scene.  *Id.*, ¶ 7.  When he arrived on the scene, Defendant Oliver observed an Alabama State Trooper with a subject in custody and additional law enforcement on the scene.  *Id.*, ¶ 8.  Defendant Oliver determined that the situation appeared to be under control and that his help was not needed, so he left the scene.  *Id.*, ¶¶ 9, 10.  Defendant Oliver never got out of his car while at the scene.  *Id.*, ¶ 11.

Defendant Oliver did not touch, speak to, or in any way have contact with Plaintiff on November 16, 2009.  *Id.*, ¶¶ 13, 14.  Defendant Oliver did not witness any use of force against Plaintiff.  *Id.,* ¶ 15.

**C.  Plaintiff's Affidavit[2]**

On November 16, 2009, at approximately 9:45 a.m., Plaintiff exited I-65 and drove into a Chevron Station to get gas.  Docket No. 59, ¶¶ 6, 7.  Plaintiff exited his vehicle, entered the Chevron convenience store, and proceeded to the service counter to pay for his intended gasoline purchase.  *Id.*, ¶ 8. Out of the corner of his eye, Plaintiff perceived a large male quickly entering, arms raised with a firearm drawn and extended in front of him, screaming loudly, "Get-Down,

---

[1]Defendant Oliver has since retired.  Docket No. 53-2, ¶ 5.

[2]These are the facts of Plaintiff's Affidavit that are contextual and relevant to the instant Defendants.

5

Get-Down, Get-Down!" *Id.*, ¶ 9. Fearing a robbery in progress, Plaintiff ducked behind the end of the service counter. *Id.*, ¶¶ 10, 11. As Plaintiff peered back towards the front of the store, he was knocked to the floor and shot in the upper center of his chest with a Taser. *Id.*, ¶ 11. As he regained awareness of his surroundings, he became aware that "about six" law enforcement officers were all over him, pushing him to the floor and pinning him to the ground. *Id.*, ¶ 12.

With regard to Defendant Luna specifically, Plaintiff states that Officer Luna kicked him in the ribs, dropped his knee into Plaintiff's back, then yanked Plaintiff's right arm above his head and jerked it down to the center of his back. *Id.*, ¶ 15. After Plaintiff was handcuffed, Officer Luna twisted, pulled, and bent Plaintiff's right arm, shoulder, neck, and head, and continued to strike and beat Plaintiff with his fist. *Id.*, ¶ 18. Officer Luna stomped on Plaintiff's left ankle before Officers Luna and Taylor dragged Plaintiff feet first through the store to the outside of the Chevron Station parking lot. *Id.*, ¶¶ 19, 22. Plaintiff states that Defendant Luna "inflicted a malicious and sadistic beating" upon him. ¶ 19.

Officer Luna placed Plaintiff in the back seat of his police car and joked with his fellow officers for twenty minutes before transporting Plaintiff to the Jail. *Id.*, ¶¶ 46, 47. When transporting Plaintiff to the Jail, Officer Luna drove wildly at an excessively high rate of speed along narrow and winding roadways, causing Plaintiff to slide about and bang his shoulder into the metal door jam, as Officer Luna did not restrain Plaintiff with seat belts during transport. *Id.*, ¶¶ 47, 48. As a result of Officer Luna's "unsubstantiated public intoxication charge," Plaintiff's marriage has been irretrievably broken and he has lost his truck and work tools, as his wife has refused to go to the automobile impound lot and retrieve them. *Id.*, ¶¶ 53, 54.

With regard to Defendant Oliver specifically, the only allegations against Defendant

6

Oliver contained in Plaintiff's Affidavit are as follows:

> 20. While I laid handcuffed on the floor wracked in pain, I overheard one of the unknown law enforcement officers make an inquiry of: "Do we need to lash this one's feet together, Chief?"
>
> 21. Accordingly, it is my information and belief that WILLIAM OLIVER, acting in his capacity as Chief of the Ardmore Police Department was present inside the store of the Chevron Service Center located in Ardmore, Tennessee on Monday morning, 16 November 2009, and that he did witness use of "excessive force" against me, and also, he failed to intervene . . . [,] failed to control his employees and knowingly acquiesced in the unconstitutional conduct of his offending subordinate. . . . Furthermore, WILLIAM OLIVER, acting in his capacity as Chief of the Ardmore Police Department had the opportunity to prevent the harm from occurring . . .

*Id.*, ¶¶ 20, 21.[3]

**D. Plaintiff's Deposition**

In his deposition, Plaintiff testified as follows:

> Q. The affidavit that you have in front of you that's document 59 in the federal court case, if you would just look at the third to last page. And I'm talking about the page that has a signature on it. Do you see – do you see the signature?
> A. My signature?
> Q. Yes, sir.
> A. Yes, sir.
> Q. Is that your signature?
> A. Yes, sir.
> Q. You signed that?
> A. Yes, sir.
> Q. And underneath it it says that you signed this affidavit under oath that it's true and correct to the best of your

---

[3]The allegations in paragraph 21 are not in a form required by Fed. R. Civ. P. 56, because they are based upon Plaintiff's "information and belief," rather than his personal knowledge. *See* Fed. R. Civ. P. 56(e); *Harris v. Gonzales*, 488 F.3d 442, 446 (D.C. Cir. 2007); W*uliger v. Eberle*, 414 F. Supp. 2d 814, 818 (N.D. Ohio 2006). They are included herein, however, as they are the only allegations against Defendant Oliver.

| | knowledge, information and belief? |
|---|---|
| A. | Yes, sir. |
| Q. | Was that true when you signed the affidavit? |
| A. | Yes. |
| Q. | And it was your intention for the affidavit to be true and correct? |
| A. | Yes. |
| Q. | If you could look at paragraph 12 of your affidavit. It says that right after you were tased you became cognizant of about six law enforcement officers all over you, pushing you to the ground floor and pinning you to the ground. |
| A. | Right. |
| Q. | Is that true? |
| A. | Right. |
| Q. | And – |
| A. | I'm just saying six. If it was four, if it was ten, they was just all over me. |

. . .

| | |
|---|---|
| Q. | Then paragraph 15 it says Tracy Luna kicked you in the ribs, dropped with his knee onto your back, yanked your right side arm above your head, jerked it down to the center of your back as Trooper Taylor placed a set of handcuffs tightly on [your] wrists. Is that true? |
| A. | I'm saying they're all over me. Taylor is on this (indicating) side, Luna and these cats are all over me, they're kicking me, he's running that stuff through me twice, and then I can't really tell who put the handcuffs on me. |

. . .

| | |
|---|---|
| Q. | Okay. And then they – And then you told us earlier that after this meeting Sergeant Luna and Officer Taylor dragged you out from behind the counter. |
| A. | They're pulling me up with my arms up (indicating). And I can't even hardly use my legs after being tased and using the bathroom on myself and then they're getting me to the end of that corner before I could even stand up to get my – get my feet up under me walking. |
| Q. | But once they get you out from under – from behind the counter you're able – you are able to walk – |
| A. | Right. |
| Q. | – to the door? |
| A. | Right. |

8

| | | |
|---|---|---|
| Q. | Under your own power? | |
| A. | Right. | |
| Q. | Was Chief Oliver participating in the beating inside the store? | |
| A. | I don't even know. He's just out there outside, I don't even – I don't know who was in there. . . . | |

. . .

| | | |
|---|---|---|
| Q. | As we sit here today, can you tell us whether or not Chief Oliver ever touched you? | |
| A. | That's where it's going to get into the John Does. I know I was tased by Taylor, Oliver is – something I read he's saying that the didn't even never get out of his car, which I can't even believe with him standing there, but – So. | |
| Q. | Can you tell us under oath whether he – whether he did not get out of his car today? | |
| A. | I just know that the – they were in plain clothes standing there, they was all in my truck right here, my truck, they were all around it. This at the gas pump they're standing over here and they're plain clothes here. There's cars and police cars everywhere. Way more than what these pictures show. | |
| Q. | Mr. Burton, I understand there were lots of officers there. That's your testimony. What I'm asking you specifically is did Chief Oliver ever lay a hand on you? Do you do [*sic*]? | |
| A. | I would say he had no reason to, he should have been just directing the scene. | |
| Q. | So sitting here today, it's your testimony that Chief Oliver did not lay a hand on you? | |
| A. | I don't know if Oliver did. I don't know their names. | |
| Q. | So you can't – sitting here today under oath your testimony is you don't know whether Chief Oliver laid a hand on you? | |
| A. | That ain't my testimony. I don't recollect, I don't remember. | |
| Q. | So you don't know whether he did? | |
| A. | I'm not saying that. | |

Docket No. 81-2, pp. 10-16.

**E. Surveillance Video**

Defendants have submitted a DVD labeled "Convenience Store Video." The video was submitted with a letter to the Clerk, which states in pertinent part "Please find enclosed for filing a video to be filed in the above captioned case." Defendants rely upon the video and what it purportedly shows in support of their Motion for Summary Judgment.

The DVD, however, is not in a form required by Fed. R. Civ. P. 56. The DVD is not authenticated and, while it shows a number of people in what appears to be a convenience store, there is nothing in a form required by Rule 56 that identifies the DVD, when or where it was taken, or the participants in the video. The Court, therefore, will not consider it.

### III. Analysis

**A. Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. 42 U.S.C. § 1983**

Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. §1983. *See* Docket Nos. 1, 35. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

11

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### C.  The Case at Bar

In the case at bar, Plaintiff filed his Affidavit contemporaneously with his Response in Opposition to the instant Motion for Summary Judgment. Shortly thereafter, Defendants filed a Motion to hold their Motion for Summary Judgment in Abeyance pending the taking of Plaintiff's Deposition and the obtaining of Plaintiff's responses to their Interrogatories and Request for Production, which was granted. Plaintiff was subsequently deposed. As can be seen by the testimony quoted from Plaintiff's Affidavit and Deposition, *supra*, there are some marked differences between Plaintiff's Deposition and his Affidavit testimony.

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Briggs v. Potter,* 463 F.3d 507, 512-13 (6th Cir.2006) (*quoting Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986)). When the sworn statements conflict, the conflicting statements should be stricken. *See Aerel, S.R.L., v. PCC Airfoils, L.C.C.,* 488 F.3d 899, 906 (6th Cir.2006).

Plaintiff, in his Affidavit, swore, *inter alia*, that Defendant Luna kicked Plaintiff in his ribs; dropped his knee into Plaintiff's back; yanked Plaintiff's arm above his head and jerked it

12

down; twisted, pulled, and bent his arm, shoulder, neck, and head; struck and beat Plaintiff with his fist; and stomped on Plaintiff's ankle. Later, however, Plaintiff testified in his Deposition that he did not know how many officers were present, and that he could not identify which officers were present or which officers took part in his alleged beating.

The Court must view the facts in the light most favorable to Plaintiff. Plaintiff did not completely contradict the statements in his affidavit with regard to Defendant Luna. As quoted above, Plaintiff testified in his Deposition:

> I'm saying they're all over me. Taylor is on this (indicating) side Luna and these cats are all over me. They're kicking me, he's running that stuff through me twice, and I can't really tell who put the handcuffs on me.

Thus, Defendant Luna is not entitled to a judgment as a matter of law with regard to the foregoing allegations.

Plaintiff's testimony that Defendant Luna and another officer dragged him out from behind the counter and into the parking lot is, at least in part, contradicted by his deposition testimony that, once they got him out from behind the counter, he was able to walk to the door under his own power. Because Plaintiff's statements are contradictory, Defendant Luna is entitled to a judgment as a matter of law with regard to this claim.

Plaintiff's remaining allegations against Defendant Luna are that, during Plaintiff's transport to Jail, he drove wildly and at an excessive rate of speed without securing Plaintiff with a seatbelt; and that Plaintiff's marriage has been irretrievably broken and he has lost his truck and work tools because his wife refuses to retrieve them from the impound lot as a result of Defendant Luna charging Plaintiff with public intoxication. Neither of these allegations, however, rises to the level of a constitutional violation. Absent the violation of Plaintiff's

13

constitutional rights, Defendant Luna cannot be held liable based upon these allegations.

With regard to Defendant Oliver, Plaintiff states in his Affidavit that Defendant Oliver was inside the convenience store during his alleged beating and witnessed the use of "excessive force" against him, but failed to intervene. Plaintiff testified in his Deposition, however, that he did not know whether Defendant Oliver was inside or outside of the convenience store, whether Defendant Oliver participated in his alleged beating, whether Defendant Oliver ever touched him in any manner, or whether Defendant Oliver even got out of his car.

While Plaintiff's Affidavit and Deposition testimony regarding Defendant Oliver is arguably contradictory, Plaintiff's allegations against Defendant Oliver contained in his Affidavit are not in a form required by Fed. R. Civ. P. 56, as they are made upon "information and belief," and not upon Plaintiff's personal knowledge as required by Fed. R. Civ. P. 56(e). *See* note 3, *supra*. Plaintiff's Deposition testimony regarding Defendant Oliver fails to establish that Defendant Oliver did, or failed to do, anything specifically. Considering Defendant Oliver's Affidavit, the Court concludes that Plaintiff has failed to show a genuine issue as to any material fact, and that Defendant Oliver is entitled to a judgment as a matter of law. Defendant Oliver cannot be shown to have violated Plaintiff's constitutional rights. Absent such a showing, Defendant Oliver cannot be held liable.

### IV.  Conclusion

For the reasons discussed above, the undersigned recommends that Defendant Luna's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART and that

Defendant Oliver's Motion for Summary Judgment be granted.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge