# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | |
|---|---|
| BART BURTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 1:10-0109 |
| | ) JUDGE CAMPBELL/KNOWLES |
| | ) |
| JOSH TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

The undersigned previously submitted a Report and Recommendation recommending that a Motion for Summary Judgment filed by Defendant Tracy Luna be denied in part. Docket No. 88. Defendant Luna filed timely Objections to the Report and Recommendation. Docket No. 97. While Plaintiff had the opportunity to respond to Defendant Luna's Objections, he did not do so.

This action involves claims of excessive force by the pro se Plaintiff. Defendant Luna previously filed a Motion for Summary Judgment, with supporting materials. One piece of evidence Defendant Luna relied upon was a videotape allegedly showing the incidents complained of by Plaintiff. The undersigned declined to consider the videotape in connection with the previous Report and Recommendation, stating:

> The DVD, however, is not in a form required by Fed. R. Civ. P. 56. The DVD is not authenticated and, while it shows a number of people in what appears to be a convenience store, there is nothing in a form required by Rule 56 that identifies the DVD, when or where it was taken, or the participants in the video. The Court, therefore, will not consider it.

Docket No. 88, p. 10.

With his Objections, Defendant Luna filed four Exhibits, two Declarations, an Affidavit, and deposition excerpts from Plaintiff's deposition. These Exhibits properly authenticate the video that Defendant Luna previously submitted.[1]

Following the filing of Defendant Luna's Objections, Judge Campbell entered an Order stating in relevant part as follows:

> In light of Defendant Luna's Objections and the attached Affidavit and portions of Plaintiff's deposition, the case is referred back to the Magistrate Judge to consider the video which was manually filed herein and to determine whether that video changes any portion of the Magistrate Judge's Report and Recommendation.

Docket No. 105, p. 1.

The undersigned discussed the relevant facts in the Report and Recommendation. The Court determined that, while Defendant Luna was entitled to summary judgment on some of Plaintiff's claims, he was not entitled to summary judgment on all of Plaintiff's claims. In his Affidavit, Defendant Luna stated that, when he arrived at the scene, an Alabama State Trooper

---

[1] As will be discussed in greater detail below, Defendant Josh Taylor also filed a Motion for Summary Judgment in this case. Docket No. 83. Defendant Taylor's Motion, which was filed approximately five (5) months after the Summary Judgment Motion of Defendant Luna, was accompanied by the Declaration of Defendant Taylor. Docket No. 85-1. Defendant Taylor's Declaration, which was filed approximately three weeks before the undersigned's Report and Recommendation was submitted, likely provides enough information in and of itself to authenticate the surveillance video. Had the Court been aware of the matters set forth in Defendant Taylor's Declaration at the time the Report and Recommendation was submitted, the undersigned might well have recommended that Defendant Luna's Motion for Summary Judgment be granted. Defendant Luna, however, did not refer to Defendant Taylor's Declaration, and the undersigned had no reason to consider Defendant Taylor's Declaration in connection with Defendant Luna's Motion for Summary Judgment. *See Street v. J. C. Bradford,* 866 F.2d 1472, 1479-80 (6th Cir. 1989) (court has no duty to search the record in connection with a Motion for Summary Judgment).

2

had already taken Plaintiff into custody.  They led Plaintiff outside, and Defendant Luna arrested Plaintiff for public intoxication and resisting arrest.  Defendant Luna put Plaintiff in his patrol car without incident.  Defendant Luna did not inflict any physical force against Plaintiff, did not physically injure Plaintiff or cause him to suffer physical or mental pain, did not taser Plaintiff, and did not stomp on Plaintiff's ankle.  Docket No. 88, p. 4.

Plaintiff submitted his own Affidavit in opposition to Defendant Luna's Motion.  Docket No. 59.  In that Affidavit, Plaintiff essentially stated that he entered the convenience store, and he perceived, out of the corner of his eye, a large male quickly entering, arms raised with a firearm drawn and extended in front of him, screaming loudly, "Get-Down, Get-Down, Get-Down!"  Docket No. 59, ¶ 9.  Feeling a robbery in progress, Plaintiff ducked behind the end of the service counter.  *Id*., ¶¶ 10, 11.  As he peered toward the front of the store, he was knocked to the floor and shot in the upper center of his chest with a Taser.  *Id*., ¶ 11.  He became aware that "about six" law enforcement officers were all over him, pushing him to the floor and pinning him to the ground.  *Id*., ¶ 12.

Plaintiff stated in his Affidavit that Officer Luna kicked him in the ribs, dropped his knee into Plaintiff's back, then yanked Plaintiff's right arm above his head and jerked it down to the center of his back.  *Id.,* ¶ 15.  After Plaintiff was handcuffed, Officer Luna twisted, pulled, and bent Plaintiff's right arm, shoulder, neck, and head, and continued to strike and beat Plaintiff with his fist.  *Id.,* ¶ 18.  Officer Luna stomped on Plaintiff's left ankle before Officers Luna and Taylor dragged Plaintiff feet first through the store to the outside of the station parking lot.  *Id*., ¶¶ 19, 22.  Plaintiff stated the Defendant Luna "inflicted a malicious and sadistic beating" upon him.  *Id*., ¶ 19.

In the Report and Recommendation, the undersigned stated:

> Plaintiff, in his Affidavit, swore, *inter alia*, that Defendant Luna kicked Plaintiff in his ribs; dropped his knee into Plaintiff's back; yanked Plaintiff's arm above his head and jerked it down; twisted, pulled, and bent his arm, shoulder, neck, and head; struck and beat Plaintiff with his fist; and stomped on Plaintiff's ankle. Later, however, Plaintiff testified in his deposition that he did not know how many officers were present, and that he could not identify which officers were present or which officers took part in his alleged beating.
>
> The Court must view the facts in the light most favorable to Plaintiff. Plaintiff did not completely contradict the statements in his affidavit with regard to Defendant Luna. As quoted above, Plaintiff testified in his deposition:
>
>> I'm saying they're all over me. Taylor is on this (indicating) side, Luna and these cats are all over me. They're kicking me, he's running that stuff through me twice, and I can't really tell who put the handcuffs on me.
>
> Thus, Defendant Luna is not entitled to a judgment as a matter of law with regard to the foregoing allegations.

Docket No. 88, p. 13.

The Court has watched the surveillance video several times. The "video" is actually four separate videos taken by different cameras, which are identified on the DVD menu as counter, front door, parking lot, and store. Each of the four segments has a digital clock. The earliest video, taken by the parking lot camera, is from the station looking toward the gas pumps. A red SUV pulls up to one of the pumps, followed quickly by a green and white car. Someone steps out of the green and white car with what appears to be a gun, drawn pointing forward. That person proceeds quickly to the red SUV but, in the meantime, a man in a blue tee shirt comes toward the store. The other person, apparently a law enforcement officer, follows.

4

The front door camera and the store camera show the man in the blue tee shirt coming into the front door of the store, followed by the officer. The video segment from the counter camera shows the man in the blue tee shirt walking quickly behind the counter followed by the officer, who points his weapon at the man. The man gets on the ground but appears to offer resistance to being handcuffed by the officer. At some point, the officer puts his lower leg across Plaintiff's back. It is unclear whether Plaintiff was handcuffed at that time. The officer appears to be talking to the store employee who was behind the counter. The officer sits Plaintiff up and, with some difficulty, attempts to lift him to his feet. It appears that Plaintiff resists those attempts. This is how the counter video ends. Because of the angle, the store video does not show what occurred behind the counter.

Significantly, Defendant Josh Taylor filed his own Declaration in support of his Motion for Summary Judgment. Docket No. 85-1. In that Declaration, Defendant Taylor stated that he is an Alabama Trooper and that he is the law enforcement official depicted in the video. *Id.,* p. 1, 6. He refers to the man who exited the maroon Ford Explorer at the convenience store and states that he now knows that man to have been Plaintiff Bart Burton. Docket No. 85-1, p. 3. He also states that the weapon he was holding and pointing at Plaintiff was a Taser. *Id.*, p.4. With a good deal of difficulty, and several uses of the Taser, he was able to handcuff Plaintiff. *Id.*, p. 4-5. His Declaration further states:

> 57. Shortly thereafter, Sgt. Tracy Luna with the Ardmore Police Department arrived on the scene.
>
> 58. Sgt. Luna and I helped Burton to his feet an [*sic*] escorted him outside.
>
> . . .
>
> 62. At no time did I witness any of the Tennessee law

5

> enforcement officials kick, punch, or beat Burton or use any other force considered to be excessive.
>
> . . .
>
> 67. I have watched the video surveillance from the Chevron station on November 16, 2009 and it is a true and accurate representation of what occurred that morning. I am the law enforcement official depicted in the video surveillance.

*Id.*, p. 5-6.

It is readily apparent that Plaintiff's version of the incidents is utterly and completely contradicted by the video. Only one officer was involved in subduing Plaintiff, and that officer was Defendant Taylor, not Defendant Luna. The video plainly shows that neither Officer Luna nor Officer Taylor kicked Plaintiff in the ribs, dropped his knee into Plaintiff's back, yanked Plaintiff's right arm over his head, or jerked it down to the center of his back. Moreover, Officer Luna did not twist, pull, and bend Plaintiff's right arm, shoulder, neck and head. He did not "continue" to strike and beat Plaintiff with his fist, nor did he ever strike and beat Plaintiff with his fist. He did not stomp on Plaintiff's left ankle, nor did he inflict a malicious and sadistic beating upon Plaintiff.

The United States Supreme Court has recently issued a decision in a similar case involving a video that contradicted Plaintiff's version of events. *Scott v. Harris*, 550 U.S. 372 (2007). The *Scott* Court stated in relevant part:

> As this case was decided on summary judgment, there have not yet been actual findings by a judge or jury, and [plaintiff's] version of events (unsurprisingly) differ substantially from [defendant's] version. When things are in such posture, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." . . . In qualified immunity cases, this usually means adopting (as the Court Appeals did here) the plaintiff's version of the fact.

6

> There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indication that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by [plaintiff] and adopted by the Court of Appeals.
>
> . . .
>
> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue with whether [plaintiff] was driving in such a fashion as to endanger human life. [*Plaintiff's*] *version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.*

550 U.S. at 378-82 (emphasis added, citation and footnote omitted).

Viewing the facts in the light depicted by the surveillance video, the undersigned concludes that there is no genuine issue as to any material fact, and that Defendant Luna is entitled to a judgment as a matter of law.

For the foregoing reasons, the undersigned recommends that Defendant Luna's Motion for Summary Judgment (Docket No. 53) be GRANTED, and that Plaintiff's claims against Defendant Luna be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge