IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| BART BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-00109 |
| | ) | Judge Campbell / Knowles |
| v. | ) | |
| | ) | |
| JOSH TAYLOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

Pending before the Court is a Motion for Summary Judgment filed by Defendant Joshua Taylor. Docket No. 83. Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 84), a Statement of Undisputed Material Facts (Docket No. 85), his Declaration (Docket No. 85-1), Excerpts of Plaintiff's Deposition (Docket No. 85-2), the Declaration of Tina Williams (Docket No. 85-3), the Declaration of Jeffrey McCarthy (Docket No. 85-4), and the video surveillance recorded on November 16, 2009 at the scene of Plaintiff's arrest (*see* Docket No. 80).

Plaintiff has filed a Response to the instant Motion. Docket No. 100. Plaintiff has also filed his Declaration and a "Statement of Disputed [*sic*] Facts." Docket Nos. 101, 102. Plaintiff has not, however, specifically responded to Defendant's Statement of Undisputed Facts. The Court will consider Plaintiff's Declaration to the extent that it may dispute Defendant's Statement of Undisputed Material Facts and/or Defendant's Declaration.

1

As has been discussed in the undersigned's previously submitted Reports and Recommendations in this case (Docket Nos. 44, 88, 114), this action involves claims of excessive force. Plaintiff filed this pro se, in forma pauperis action pursuant to 42. U.S.C. §1983, alleging that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights during his arrest and subsequent incarceration on November 16, 2009. *See* Docket No. 1, Complaint, and Docket No. 35, Amended Complaint. Plaintiff sues Defendants in their individual capacities only. *Id.* Plaintiff seeks compensatory and punitive damages, as well as any other relief to which he may be entitled. *Id.*

In his Amended Complaint, Plaintiff makes the following allegations against Defendant Taylor:

> 11. During the arrest, the plaintiff was physically injured, causing him to suffer physical and mental pain by an out-of-state trooper and local police officers acting under color of authority derived from the state.
>
> 12. The arrest was made about noon, when, without warning, an Alabama state trooper Josh Taylor knocked plaintiff to the floor, then effected severe injury when he shot the plaintiff in his upper chest with a high-powered Taser gun which caused plaintiff to be impaled with deep penetrating metal prongs.
>
> 13. As plaintiff laid on the floor, offering no resistance, one of the arresting officers set out kicking plaintiff in the upper body area, while the state trooper administered two more unnecessary high-voltage electrical shocks.

Docket No. 35, ¶¶ 11-13.

Defendant Taylor filed the instant Motion for Summary Judgment arguing that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law because the video surveillance footage indisputably demonstrates that: (1) he did not use any

force greater than that which was necessary to protect the bystanders and to arrest Plaintiff; (2) the amount of force he used to handcuff Plaintiff was reasonable; (3) he did not use any other force on Plaintiff; and (4) no other officers used force upon Plaintiff, therefore Defendant did not fail to intervene on Plaintiff's behalf. Docket No. 84. Defendant argues that the video surveillance footage demonstrates that he did not violate Plaintiff's Fourth or Fourteenth Amendment rights, and that he is entitled to qualified immunity for his actions in arresting Plaintiff. *Id.*

Plaintiff filed a Response to the instant Motion, arguing that Defendant's Motion should be denied because he "vehemently questions the authenticity of the video because it does not depict all events surrounding plaintiff's arrest."[1] Docket No. 100. As the undersigned has discussed in a previous Report and Recommendation in this case (Docket No. 114), despite Plaintiff's "vehemently" questioning the authenticity of the video, the video surveillance at issue has been properly authenticated.

For the reasons discussed below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II. Facts[2]

### A. Defendant's Declaration

Defendant filed his own Declaration in support of his Motion for Summary Judgment.

---

[1] Plaintiff makes this statement in his Response, not in his Declaration. Plaintiff offers no factual support for the proposition that the video is not authentic.

[2] The following facts are in a form required by Fed. R. Civ. P. 56. As will be discussed in greater detail below, while there are some factual differences between Defendant's Declaration and Plaintiff's Declaration, the Court will accept the version of the facts as shown by the video surveillance footage.

3

Case 1:10-cv-00109   Document 122   Filed 03/12/12   Page 3 of 12 PageID #: 681

Docket No. 85-1.  In his Declaration, Defendant states that he is an Alabama Trooper and that he is the law enforcement official depicted in the video.  *Id.,* ¶¶ 2, 67.  By way of background, he explains that, on November 16, 2009, at approximately 9:41 a.m., while on patrol in Alabama, near the Alabama/Tennessee state line, he witnessed a maroon Ford Explorer exit from the interstate, then re-enter the interstate going against traffic.  *Id.*, ¶¶ 6, 7, 8, 10.  Defendant states that he activated his blue lights and siren, and pursued the maroon Ford Explorer, which refused to stop, and which darted in and out of traffic at speeds in excess of 100 miles per hour.  *Id.*, ¶¶ 11, 12, 19.  Defendant states that the maroon Ford Explorer exited the interstate at Exit 1, ran the stop sign at the bottom of the exit, turned right onto US Highway 31 heading back towards Alabama, then made a quick right turn into the parking lot of a Chevron gas station located on US Highway 31 in Ardmore, Tennessee.  *Id.*, ¶¶ 21, 22, 24.  Defendant states that the maroon Ford Explorer came to a stop near the gas pumps and a man exited the Ford Explorer.  *Id.*, ¶¶ 25, 26.  He refers to the man who exited the maroon Ford Explorer at the convenience store and states that he now knows that man to have been Plaintiff Bart Burton.  *Id.*, ¶ 26.

Defendant states that he saw Plaintiff walking towards the door of the gas station and chased him into the gas station.  *Id.*, ¶¶ 36, 37.  Defendant states that there were several customers in the gas station who began to take cover, that Plaintiff went straight behind the gas station counter, that he pursued Plaintiff with his Taser drawn, and that he ordered Plaintiff to get down on the ground or be tasered, but that Plaintiff refused.  *Id.*, ¶¶ 38, 39, 40, 42, 43.  Defendant states that, with a good deal of difficulty, and several uses of the Taser, he was able to handcuff Plaintiff.  *Id*., ¶¶ 42-54.  Defendant states that, shortly after he was able to handcuff Plaintiff, Defendant Luna arrived on the scene, and that, he, and Defendant Luna, helped

4

Plaintiff to his feet and escorted him outside. *Id.,* ¶¶ 57, 58.

Defendant's Declaration further states:

> 44. By using verbal commands prior to using force and attempting to take physical control of Burton, I followed the proper force continuum prior to using the Taser. Escalating the level of force was necessary to eliminate the risk of injury to others as quickly as possible.
>
> 45. I could not gain physical control of Burton because he kept backing away from me, so I activated my Taser and placed the red siding dot on his abdomen and pulled the trigger.
>
> 46. Burton did not seem to be fully affected by the Taser because he did not fall to the ground incapacitated.
>
> 47. Burton started towards me as I realized one of the probes must have missed.
>
> 48. I then tasered Burton with a drive stun to his thigh.
>
> 49. Progressing to a drive stun format is the next level in the force continuum for using a Taser, which was necessary in this situation because one of the probes missed Burton and therefore, he was not incapacitated.
>
> 50. Burton began to collapse to the ground, but he resisted me all the way down to the ground.
>
> 51. Even on the ground, Burton was strong, and I could not get his arms behind his back.
>
> 52. I told Burton to put his hands behind his back or I would Taser him again.
>
> 53. Burton refused to do so, so I initiated the Taser again.
>
> 54. I was then able to handcuff Burton face down on the floor behind the gas station counter.
>
> . . .

5

Case 1:10-cv-00109   Document 122   Filed 03/12/12   Page 5 of 12 PageID #: 683

59. At no time did I kick, punch or beat Burton.

60. I used only the amount of force necessary to take control of Burton and handcuff him.

61. I did not use any other force towards Burton after I handcuffed him.

. . .

63. I did not escort Burton to jail or otherwise have any other contact with him that day.

64. In the regular course of business, I create a use of force investigation report each time I use force on a subject.

65. Pursuant to my use of force investigation report, I collected the video surveillance from the Chevron gas station that depicted the events leading up to my use of force and my use of force on Burton.

66. Tim Toone, a Tennessee official burned the video surveillance to a disc and gave it to me.

67. I have watched the video surveillance from the Chevron station on November 16, 2009 and it is a true and accurate representation of what occurred that morning. I am the law enforcement official depicted in the video surveillance.

*Id.*, ¶¶ 44-67.

## B. Plaintiff's Declaration

In his Declaration, Plaintiff states in relevant part as follows:

8. I exited my vehicle and entered the store, whereupon I proceeded to the service counter to pay for my intended gasoline purchase.

9. At that point, out of the corner of my eye, I perceived a glimpse of a large male quickly entering the doorway, arms raised with a firearm drawn and extended in front of him, screaming loudly, "Get-Down, Get-Down, Get-Down!"

10. Fearing a robbery in progress, I quickly reacted by ducking

6

and hastily moving in a weaving and bobbing manner away from the perceived danger, towards the end of the service counter in search of protective cover.

11. After ducking behind the end of the service counter, I turned about and stuck my head out around the edge of the counter to peer back towards the front of the store to locate the robber, when suddenly I was abruptly knocked to the floor and shot in the center of my upper chest with – what I now know was – a high-powered Taser gun.

12. I do not know whether I simply blacked-out momentarily or was temporarily rendered unconscious from the high-voltage electrical shocks which had been administered to my body, however, as I regained awareness of my surroundings I first heard profane shouting, then I became cognizant that about six law enforcement officers were all over me, pushing me to the floor and pinning me to the ground.

13. As I laid on the floor, offering no resistance, I felt the surge of two more paralyzing high-voltage electrical shocks exploding through-out my body completely immobilizing me as one of the arresting officers was kicking me in the upper body area.

14. As I informed these law enforcement officers that I had recently undergone surgery on my shoulder just two and one-half months earlier, they continued to repeatedly thrust my head and face against the floor, one of the officers is hollering, "Get your hands above your head!" as another officer is screaming something else.

15. During this time, another arresting officer Tracy Luna, first kicked me in the ribs, then dropped with his knee onto my back, then forcefully yanked my right-side arm above my head, and then, jerked it down to the center of my back as Trooper Joshua Taylor placed his set of handcuffs tightly on my wrists.

Docket No. 102, ¶¶ 8-15.

### III. Analysis

**A. Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party

8

is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## B.  42 U.S.C. § 1983

Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## C.  The Case At Bar

The undersigned has previously discussed the video and its importance in a Report and

Recommendation recommending that Defendant Luna's Motion for Summary Judgment be granted. Docket No. 114. As the Court therein noted, the United States Supreme Court has recently stated in *Scott v. Harris*, 550 U.S. 372, 380-81(2007):

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue, whether [plaintiff] was driving in such a fashion as to endanger human life. *[Plaintiff's] version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.*

Docket No. 114, p. 7 (emphasis added).

The undersigned also described the video surveillance footage as follows:

> The front door camera and the store camera show [Plaintiff] coming into the front door of the store, followed by [Defendant Taylor]. The video segment from the counter's camera shows [Plaintiff] walking quickly behind the counter followed by [Defendant Taylor], who points his weapon at the man. The man gets on the ground but appears to offer resistance to being handcuffed by the officer. At some point the officer puts his lower leg across Plaintiff's back. It is unclear whether Plaintiff was handcuffed at that time. The officer appears to be talking to the store employee who was behind the counter. The officer sits Plaintiff up and, with some difficulty, attempts to lift him to this feet. It appears that Plaintiff resists those attempts.
> . . .
>
> It is readily apparent that Plaintiff's version of the incidence is utterly and completely contradicted by the video. Only one officer was involved in subduing Plaintiff, and that officer was Defendant Taylor, not Defendant Luna. The video plainly shows that neither officer Luna nor officer Taylor kicked Plaintiff in the ribs, dropped his knee into Plaintiff's back, yanked Plaintiff's right arm over his head, or jerked it down to the center of his back.

Docket No. 114, p. 5-6.

The surveillance video footage clearly supports Defendant's sworn statements, and clearly discredits those of Plaintiff. As the *Scott* Court stated, "[Plaintiff's] version of events is so utterly discredited by the record that no reasonable jury could have believed him." Viewing the facts in the light depicted by the surveillance video, as required by *Scott*, the undersigned concludes that there is no genuine issue as to any material fact, and that Defendant Taylor is entitled to a judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant Taylor's Motion for Summary Judgment (Docket No. 83) be GRANTED, and that Plaintiff's claims against Defendant Taylor be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge